FILED
CLERK, U.S. DISTRICT COURT

JUN 20 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LARRY ROSSER,                    )   NO. CV 07-4980-DDP(E)
                                 )
          Petitioner,            )
                                 )   ORDER ADOPTING FINDINGS,
     v.                          )
                                 )   CONCLUSIONS AND RECOMMENDATIONS
L. E. SCRIBNER, Warden,          )
                                 )   OF UNITED STATES MAGISTRATE JUDGE
          Respondent.            )
_____)

     Pursuant to 28 U.S.C. § 636, the Court has reviewed the
Petition, all of the records herein and the attached Report and
Recommendation of United States Magistrate Judge.   The Court approves
and adopts the Magistrate Judge's Report and Recommendation.

     IT IS ORDERED that Judgment be entered denying and dismissing
the Petition with prejudice.

///
///
///
///

1    IT IS FURTHER ORDERED that the Clerk serve copies of this

2  Order, the Magistrate Judge's Report and Recommendation and the

3  Judgment herein by United States mail on Petitioner and counsel for

4  Respondent.

5

6    LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8    DATED:  8-18-08   , 2007.

9

10

11    _____

12    DEAN D. PREGERSON
      UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11  LARRY ROSSER,                    )  NO. CV 07-4980-DDP(E)
                                     )
12                  Petitioner,      )
                                     )
13      v.                           )  REPORT AND RECOMMENDATION OF
                                     )
14  L.E. SCRIBNER, Warden,           )  UNITED STATES MAGISTRATE JUDGE
                                     )
15                  Respondent.      )
                                     )
16  _____ )

17

18      This Report and Recommendation is submitted to the Honorable

19  Dean D. Pregerson, United States District Judge, pursuant to the

20  provisions of 28 U.S.C. section 636 and General Order 05-07 of the

21  United States District Court for the Central District of California.

22

23                          **PROCEEDINGS**

24

25      Petitioner filed a "Petition for Writ of Habeas Corpus By a

26  Person in State Custody" on August 1, 2007.  Respondent filed an

27  Answer on October 24, 2007.  On November 7, 2007, Petitioner filed a

28  Reply, accompanied by a Memorandum of Points and Authorities ("Reply

1   Mem."), and an "Application Requesting Court to Order Respondent to

2   Expand Record" ("Application to Expand the Record").  On November 9,

3   2007, the Court granted in part and denied in part Petitioner's

4   Application to Expand the Record.  On November 27, 2007, Petitioner

5   filed a "Supplemental Brief to Petitioner's Reply, etc.," _inter alia_

6   requesting entry of default judgment against Respondent.  On

7   November 28, 2007, the Court issued an order denying Petitioner's

8   request for entry of default judgment.

9

10                     **BACKGROUND**

11

12      On March 4, 1996, a jury found Petitioner guilty of the second

13   degree murder of Felisha Stevens,[1] and found true the allegation that

14   Petitioner personally used a firearm in the commission of the offense

15   (Reporter's Transcript ["R.T."] 666-68; Clerk's Transcript ["C.T."]

16   147).  The jury acquitted Petitioner of first degree murder (C.T.

17   146).  Petitioner received a sentence of nineteen years to life

18   (R.T. 676; C.T. 156).

19

20      The Court of Appeal affirmed the judgment (Respondent's Lodgment

21   15).  The California Supreme Court denied Petitioner's petition for

22   review on January 28, 1998 (Respondent's Lodgment 4).

23   ///

24   ///

25

26   ―――――――――――――――

27      [1]   The Reporter's Transcript spells Stevens' first name as "Felicia" (e.g., R.T. 183, 262).  However, the Information and the jury verdict spell Stevens' first name as "Felisha" (see C.T.

28   45, 147).  The Court employs the latter spelling.

1    On April 9, 2002, Petitioner filed an "Application to Recall the
2  Remittitur, and/or Other Appropriate Remedy" in the California Court
3  of Appeal, bearing a signature date of March 15, 2002 (Respondent's
4  Lodgment 5).  On April 17, 2002, the Court of Appeal issued an order
5  construing the Application as a habeas corpus petition and denying it
6  for failure to state facts sufficient to support relief and failure to
7  submit an adequate record for review (Respondent's Lodgments 5, 6).
8
9    On March 15, 2006, Petitioner filed a habeas corpus petition in
10 the Los Angeles County Superior Court, bearing a signature date of
11 October 9, 2005 (Respondent's Lodgment 7).  The Superior Court denied
12 the petition on April 10, 2006, on the grounds that Petitioner had
13 failed to include a declaration by an expert in intimate partner
14 battering and failed to show that expert testimony on the subject at
15 trial would have led to a different result (Respondent's Lodgment 8).
16
17   On June 15, 2006, Petitioner filed a habeas corpus petition in
18 the California Court of Appeal, which that court denied on June 20,
19 2006, on the grounds that the court would not consider issues
20 previously resolved and that the petition was both repetitive and
21 untimely (Respondent's Lodgments 9, 10).  On October 13, 2006,
22 Petitioner filed a habeas corpus petition in the California Supreme
23 Court, which that court denied on April 18, 2007 with a citation to In
24 re Robbins, 18 Cal. 4th 770, 77 Cal. Rptr. 2d 153, 959 P.2d 311 (1998)
25 (Respondent's Lodgments 11, 12).  The citation to In re Robbins
26 signified that the petition was untimely under California law.  See
27 Bennett v. Mueller, 322 F.3d 573, 578-79 (9th Cir.), cert. denied,
28 540 U.S. 938 (2003); Rainier v. Terhune, 366 F. Supp. 2d 934, 937

3

(C.D. Cal. 2005).

## SUMMARY OF TRIAL EVIDENCE

The following factual summary is taken from the opinion of the California Court of Appeal in <u>People v. Rosser</u>, Cal. Ct. App. 2d Dist. case number B106672 (Nov. 20, 1997).  <u>See Galvan v. Alaska Dep't of Corrections</u>, 397 F.3d 1198, 1199 & n.1 (9th Cir. 2005) (taking factual summary from state appellate decision).

1.  *People's Evidence.*

Viewed in accordance with the usual rules on appeal [citation], the evidence established that in about August 1994, the intimate relationship between appellant and Felecia [sic] Stevens ended.  On October 19, 1994, appellant, Stevens, and other persons were standing outside a Los Angeles residence.  Appellant and Stevens began arguing.  Stevens picked up a piece of a brick and, with her arm extended downward, either held the brick at her side or swung her arm back and forth.  Appellant and Stevens later argued repeatedly, standing about five feet apart.

Appellant left Stevens and the group.  He walked down the street to bushes in front of a house.  Appellant put his hand in the bushes, then in his pocket, and returned to Stevens and the group.  Appellant and Stevens argued again as Stevens held the piece of brick at her side.  Appellant

4

told Stevens that if she put the brick down he would put the gun away, and appellant invited Stevens to fight. Stevens dropped the brick. Appellant pulled the gun out and shot Stevens in the stomach.

Stevens fled with appellant chasing her. Appellant shot Stevens in the back. Stevens fled a short distance, fell, and, with nothing in her hands, told appellant he better kill her now or she would kill him. Appellant stood over Stevens, stated that he might as well kill the "bitch," and shot her again. Appellant then jogged away. Stevens was shot a total of three times, once in the chest and twice in the back. Appellant was later extradited from Las Vegas. Appellant was identified as the shooter by three eyewitnesses during photographic lineups and at trial.

2.   *Defense Evidence*.

In defense, appellant testified Stevens came at appellant "in a malicious way" with the brick. When Stevens was about two feet from appellant, she raised the brick. Appellant then shot Stevens. Appellant did not know if he had shot Stevens, because he was not paying attention as he fired. Appellant did not know how Stevens was shot in the back, because she did not turn around. Appellant was still afraid and fired two more shots; all three were fired in rapid succession. Stevens fell after the last shot; appellant did not shoot Stevens while she was on the ground.

1   Appellant believed he acted in "righteous self-defense."

2   Two days after the shooting, appellant went to Las Vegas.

3   After appellant was extradited, appellant lied to a police

4   detective and told him that appellant had not killed

5   Stevens.

6

7   (Respondent's Lodgment 15, pp. 3-4).

8

9                        **PETITIONER'S CONTENTIONS**

10

11   The Petition asserts four grounds for relief:

12

13   1.   Petitioner's conviction allegedly was obtained in violation

14   of Petitioner's Due Process and Equal Protection rights to have the

15   jury consider expert testimony concerning intimate partner battering

16   and its effects (Petition, Ground One, pp. 15-23);

17

18   2.   The trial court allegedly violated the Constitution by

19   refusing to instruct the jury on the alleged lesser-included offense

20   of heat-of-passion manslaughter (Petition, Ground Two, pp. 30-40);

21

22   3.   Petitioner's appellate counsel allegedly rendered ineffective

23   assistance by failing to challenge the trial court's refusal to give a

24   lesser-included offense instruction on heat-of-passion manslaughter

25   and by failing to challenge the allegedly unconstitutional composition

26   of the jury (Petition, Ground Three, pp. 41-45); and

27   ///

28   ///

4.   Petitioner's trial counsel allegedly rendered ineffective assistance, assertedly by:

a.   failing to conduct an adequate voir dire;

b.   failing to use peremptory challenges to remove certain prospective jurors;

c.   failing to make an adequate challenge for cause to one juror;

d.   failing to object to the alleged fact that a juror was not required to complete the juror questionnaire;

e.   failing to investigate, and introduce at trial, purported records of Stevens' prior suicide attempt and her criminal and medical records;

f.   failing to obtain Petitioner's booking photo taken after Petitioner was arrested for another offense the day following the murder;

g.   advising Petitioner to omit certain information from his trial testimony; and

h.   failing to subpoena and call to the stand alleged witnesses who assertedly would have testified concerning Stevens' alleged pattern of aggressive and assaultive behavior

7

1 | (Petition, Ground Four, pp. 46-61).

2

3 | **DISCUSSION**

4

5 | The "Antiterrorism and Effective Death Penalty Act of 1996"

6 | ("AEDPA"), signed into law April 24, 1996, amended 28 U.S.C. section

7 | 2244 to provide a one-year statute of limitations governing habeas

8 | petitions filed by state prisoners:

9

10 | (d)(1) A 1-year period of limitation shall apply to an

11 | application for a writ of habeas corpus by a person in

12 | custody pursuant to the judgment of a State court.  The

13 | limitation period shall run from the latest of –

14

15 | (A) the date on which the judgment became final by the

16 | conclusion of direct review or the expiration of the time

17 | for seeking such review;

18

19 | (B) the date on which the impediment to filing an

20 | application created by State action in violation of the

21 | Constitution or laws of the United States is removed, if the

22 | applicant was prevented from filing by such State action;

23

24 | (C) the date on which the constitutional right asserted was

25 | initially recognized by the Supreme Court, if the right has

26 | been newly recognized by the Supreme Court and made

27 | retroactively applicable to cases on collateral review; or

28 | ///

8

1    (D) the date on which the factual predicate of the claim or

2    claims presented could have been discovered through the

3    exercise of due diligence.

4

5    (2) The time during which a properly filed application for

6    State post-conviction or other collateral review with

7    respect to the pertinent judgment or claim is pending shall

8    not be counted toward any period of limitation under this

9    subsection.

10

11   Petitioner's conviction became final on April 28, 1998, ninety

12   days after the California Supreme Court denied Petitioner's petition

13   for review.  See Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999)

14   (period of "direct review" after which state conviction becomes final

15   for purposes of section 2244(d)(1) includes the 90-day period for

16   filing a petition for certiorari in the United States Supreme Court).

17   The statute of limitations began running on April 29, 1998, and

18   expired on April 28, 1999, unless subsections B, C or D of 28 U.S.C.

19   section 2244(d)(1) apply in the present case.  See 28 U.S.C. §

20   2244(d)(1)(A); Smith v. Bowersox, 159 F.3d 345, 347-48 (8th Cir.

21   1998), cert. denied, 525 U.S. 1187 (1999); see also Nino v. Galaza,

22   183 F.3d 1003, 1006 (9th Cir. 1999), cert. denied, 529 U.S. 1104

23   (2000) (AEDPA statute of limitations is not tolled between the

24   conviction's finality and the filing of the first state collateral

25   challenge).

26

27   Subsection B of 28 U.S.C. section 2244(d)(1) has no application

28   in the present case.  Petitioner does not allege any facts showing

9

1  that any illegal state action prevented Petitioner from filing the

2  present Petition sooner, and the record discloses no such facts.[2]

3

4      Petitioner does not rely on section 2244(d)(1)(C) (see Reply

5  Mem., p. 6).  Petitioner does not assert, nor could he, that his

6  conviction violated any constitutional right "newly recognized by the

7  Supreme Court and made retroactively applicable to cases on collateral

8  review."  See Tyler v. Cain, 533 U.S. 656, 664-68 (2001) (for purposes

9  of second or successive motions under 28 U.S.C. section 2255, a new

10 rule is made retroactive to cases on collateral review only if the

11 Supreme Court itself holds the new rule to be retroactive); Peterson

12 v. Cain, 302 F.3d 508, 511-15 (5th Cir. 2002), cert. denied, 537 U.S.

13 1118 (2003) (applying anti-retroactivity principles of Teague v. Lane,

14 489 U.S. 288 (1989), to analysis of delayed accrual rule contained in

15 28 U.S.C. section 2244(d)(1)(C)).

16

17     Petitioner does not argue that section 2244(d)(1)(D) provides an

18 accrual date later than April 29, 1998 for the claims asserted in

19 Grounds Two, Three and Four of the Petition.  In fact, Petitioner

20 concedes that the claims asserted in Grounds Two, Three and Four are

21

22

23

24 _____

25     [2]    In the portion of the Memorandum in Support of the
   Reply in which Petitioner denies he contends that he is entitled
26 to delayed accrual under section 2244(d)(1)(C), Petitioner
   suggests that section 2244(d)(1)(B) "might be more appropriate"
27 (Reply Mem., p. 6).  However, Petitioner alleges no facts showing
   that any illegal state action prevented Petitioner from filing a
28 timely petition.

1    untimely (see Reply, pp. 1-2).[3]  However, Petitioner alleges that the

2    claim in Ground One did not accrue until September of 2004, when

3    Petitioner allegedly learned of the existence of the 2004 amendments

4    to California Penal Code section 1473.5 after the prison law library

5    allegedly obtained the pocket part containing the amended statute

6    (Petition, p. 17; Reply Mem., pp. 5-6).[4]

7

8         Prior to the 2004 amendments, California Penal Code section

9    1473.5 authorized a petitioner to bring a state habeas corpus petition

10   on the ground that expert testimony relating to battered women's

11   syndrome was not admitted at the petitioner's trial, limited to

12   judgments on murder convictions resulting from a plea entered, or a

13   trial commenced, before January 1, 1992.  See former Cal. Penal Code

14   § 1473.5.  The pre-amendment statute thus was inapplicable to

15   Petitioner, whose trial occurred in 1996 (see R.T. 40; C.T. 72).  In

16   2004, the California Legislature amended the statute to provide that a

17   petitioner could bring a state habeas corpus petition on the ground

18   that expert testimony relating to intimate partner battering was not

19   admitted at the petitioner's trial, limited to violent felonies

20   committed on or before August 29, 1996.  See Cal. Stats. 2004,

21   ch. 609.  Petitioner committed his crimes in 1994 (see R.T. 183-203).

22   _____

23       [3]    However, as discussed below, Petitioner alleges that an
     "actual innocence" exception applies with respect to the claims
24   alleged in Grounds Two, Three and Four (see Reply, pp. 1-2; Reply
     Mem., pp. 7-10).
25

26       [4]    By contrast, in Petitioner's California Supreme Court
     habeas petition, filed on October 13, 2006, Petitioner explained
27   the delay in filing by stating that he "[h]ad to do necessary
     research to see how I may benefit from PC § 1473.5 in spite of my
28   being indigent" (Respondent's Lodgment 12, p. 6).

1  Thus, after 2004, state law authorized Petitioner to challenge the
2  failure to admit evidence of inmate partner battering in a state
3  habeas petition despite the finality of Petitioner's 1996 conviction.
4
5       However, at the time of Petitioner's trial, expert testimony
6  regarding battered women's syndrome generally <u>was</u> admissible in a
7  criminal trial. <u>See</u> <u>People v. Humphrey</u>, 13 Cal. 4th 1073, 1076, 1081-
8  82, 56 Cal. Rptr. 2d 142, 921 P.2d 1 (1996); Cal. Evid. Code § 1107.
9  The factual predicates for Petitioner's claim that such evidence was
10 not admitted were evident during Petitioner's trial. <u>See generally</u>
11 <u>Hasan v. Galaza</u>, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) (the
12 petitioner need not "understand the legal significance" of the facts,
13 rather than "simply the facts themselves," before the "clock starts
14 ticking").
15
16      Additionally, on August 29, 1996 (after Petitioner's conviction),
17 the California Supreme Court held in <u>People v. Humphrey</u>, 13 Cal. 4th
18 at 1088-89, that evidence of battered women's syndrome was admissible
19 not only on the issue of whether the defendant believed it was
20 necessary to kill in self-defense, but also on the reasonableness of
21 that belief.  On direct appeal Petitioner could have argued, but did
22 not, that evidence of intimate partner battering syndrome should have
23 been admitted under California Evidence Code section 1107 and <u>People</u>
24
25
26
27
28

1   v. Humphrey.[5]  Petitioner also could have argued, but did not, that

2   the failure to admit such evidence rendered Petitioner's trial

3   unconstitutionally unfair.[6]  Therefore, Petitioner has not shown that

4   section 2244(d)(1)(C) provides a later accrual date than April 28,

5   1998 for Ground One of the Petition.

6

7        In any event, even assuming, arguendo, Petitioner could not

8   assert this claim prior to the passage of the 2004 amendments to

9   California Penal Code section 1473.5, Petitioner assertedly learned of

10  the 2004 amendments to the statute in September of 2005.  Even

11  assuming, arguendo, the limitations period began to run on Ground One

12  of the Petition in September of 2005, Petitioner did not verify the

13  present Petition until July 25, 2007, well over a year later.  In sum,

14  absent tolling, the present Petition is untimely.

15

16       Section 2244(d)(2) tolls the statute during the pendency of "a

17  properly filed application for State post-conviction or other

18  collateral review."  The statute of limitations may be tolled during

19  the intervals between a state court's disposition of a state court

20  petition and the filing of a new, "properly filed" petition at the

21  next level of state court review.  See Carey v. Saffold, 536 U.S. 214,

22  _____

23       [5]   Petitioner does not argue that his gender would have
24  prevented him from introducing such evidence.  Well before
    Petitioner's trial, California courts allowed male defendants to
    assert a battered spouse defense.  See, e.g., Walker v. Neilsen,
25  1999 WL 202898 (N.D. Cal. Apr. 7, 1999) (petitioner was convicted
26  in 1982 of his wife's murder following unsuccessful assertion of
    battered spouse defense at trial).

27       [6]   Petitioner does not assert his appellate counsel
28  ineffectively failed to raise this contention on appeal.

                                13

1   215 (2002); <u>Nino v. Galaza</u>, 183 F.3d at 1006.

2

3       Petitioner first commenced state collateral review by submitting

4   his "Application to Recall the Remittitur, etc." to the Court of

5   Appeal.  As indicated above, the Court of Appeal treated that document

6   as a habeas corpus petition.  The earliest possible date Petitioner

7   could be deemed to have filed the Application to Recall the Remittitur

8   is the date Petitioner signed that document, March 15, 2002.[7]  As

9   indicated above, the Court of Appeal denied that petition on April 17,

10  2002.  Petitioner then waited years before filing his habeas petition

11  in the Los Angeles County Superior Court in 2006, which that court

12  denied on April 10, 2006 based on a failure of proof.

13

14      Petitioner next filed his June 15, 2006 Court of Appeal petition.

15  In denying the petition, the Court of Appeal referenced Petitioner's

16  direct appeal and his previous 2002 habeas petition, stated that it

17  could not consider issues previously resolved, and denied the petition

18  as repetitive and untimely (Respondent's Lodgment 10).  In

19  Petitioner's previous petition filed in the Court of Appeal in 2002,

20  Petitioner challenged the trial court's failure to give a <u>sua sponte</u>

21  lesser included offense instruction and appellate counsel's failure to

22  raise the issue of a lesser included offense instruction on appeal,

23  but did not assert any challenge to the alleged failure to admit

24  expert testimony concerning intimate partner battering (<u>see</u>

25  Respondent's Lodgment 5).  In his June 15, 2006 Court of Appeal

26  _____

27       [7]    See <u>Stillman v. LaMarque</u>, 319 F.3d 1199, 1201-02 (9th
    Cir. 2003) (applying prison mailbox rule to determine date of
28  filing of state habeas petition).

1  Petition, Petitioner asserted these same two claims, and others, and
2  also asserted a new, non-repetitive claim challenging the alleged
3  failure to admit expert testimony concerning intimate partner
4  battering (Respondent's Lodgment 10).  It thus is apparent that the
5  Court of Appeal denied Petitioner's challenge to the alleged failure
6  to admit expert testimony concerning intimate partner battering not as
7  repetitive, but as untimely.  The California Supreme Court
8  subsequently also denied a petition containing this claim as untimely.
9
10      An untimely state habeas petition is not a "properly filed"
11  petition for purposes of statutory tolling under section 2244(d)(2).
12  Pace v. DiGuglielmo, 544 U.S. 408, 412-13 (2005); see also Allen v.
13  Siebert, 128 S. Ct. 2, 3 (2007); Carey v. Saffold, 536 U.S. at 225
14  (California state habeas petition filed after unreasonable delay not
15  "pending" for purposes of section 2244(d)(2)).  If a state court
16  clearly rules that a petition is untimely, that is the "end of the
17  matter, regardless of whether it also addressed the merits of the
18  claim. . . ."  Id. at 414 (citations, internal quotations and emphasis
19  omitted); see also Bonner v. Carey, 425 F.3d 1145, 1148-49 (9th Cir.
20  2005), amended, 439 F.3d 993 (9th Cir.), cert. denied, 127 S. Ct. 132
21  (2006) (petition denied on the merits and for untimeliness not
22  "properly filed").
23
24      Here, because the Court of Appeal and the California Supreme
25  Court expressly denied Petitioner's petitions challenging the alleged
26  failure to admit expert testimony of intimate partner battering as
27  untimely, those petitions were not "properly filed" within the meaning
28  of 28 U.S.C. section 2244(d)(2), and cannot support statutory tolling.

1  Therefore, any statutory tolling concluded on April 10, 2006, the date

2  the Los Angeles Superior Court denied Petitioner's habeas petition.

3  Petitioner did not verify the present Petition until July 25, 2007,

4  more than a year later.  Thus, the present Petition is untimely.

5  Indeed, even assuming, _arguendo_, that statutory tolling continued

6  until the Court of Appeal's June 20, 2006 ruling, the present Petition

7  still is untimely.

8

9      The Ninth Circuit permits equitable tolling of the statute of

10  limitations "if 'extraordinary circumstances beyond a prisoner's

11  control make it impossible to file a petition on time.'"  See _Spitsyn_

12  _v. Moore_, 345 F.3d 796, 799 (9th Cir. 2003) (citation omitted); _see_

13  _also_ _Lawrence v. Florida_, 127 S. Ct. 1079, 1085 (2007) (assuming,

14  without deciding, that equitable tolling could apply to habeas statute

15  of limitations set forth in 28 U.S.C. section 2244(d); _Pace v._

16  _DiGuglielmo_, 544 U.S. at 418 n.8 (same).  "Generally, a litigant

17  seeking equitable tolling bears the burden of establishing two

18  elements: (1) that he has been pursuing his claims diligently, and

19  (2) that some extraordinary circumstance stood in his way."  _Pace v._

20  _DiGuglielmo_, 544 U.S. at 418 (citation omitted); _see also_ _Lawrence v._

21  _Florida_, 127 S. Ct. at 1085.

22

23      Petitioner does not assert he is entitled to equitable tolling.

24  Rather, Petitioner asserts that actual innocence excuses the

25  untimeliness of the Petition, contending that he is actually innocent

26

27

28

1   because he assertedly shot Stevens in self-defense.[8]

2

3        The Ninth Circuit has left open the possibility of an "actual

4   innocence" exception to the statute of limitations for a petitioner

5   who shows that "in light of all the evidence, including evidence not

6   introduced at trial, 'it is more likely than not that no reasonable

7   [trier of fact] would have found petitioner guilty beyond a reasonable

8   doubt.'" Majoy v. Roe, 296 F.3d 770, 776 (9th Cir. 2002) (quoting

9   Schlup v. Delo, 513 U.S. 298, 327 (1995) ("Schlup").  However, for the

10  reasons set forth below, Petitioner has failed to meet this "exacting

11  gateway standard."  See Majoy v. Roe, 296 F.3d at 775.

12

13       Under the Schlup standard, to show actual innocence sufficient to

14  overcome a procedural default, a petitioner must furnish "'new

15  reliable evidence . . . that was not presented at trial.'"  See House

16  v. Bell, 126 S. Ct. 2064, 2077-78 (2006) (quoting Schlup, 513 U.S. at

17  324; ellipses added); Griffin v. Johnson, 350 F.3d 956, 963 (9th Cir.

18  2003), cert. denied, 541 U.S. 998 (2004).  The petitioner must "show

19  _____

20       [8]    At trial Petitioner asserted the defenses of perfect
     and imperfect self-defense.  "For perfect self-defense, one must
21   actually and reasonably believe in the necessity of defending
     oneself from imminent danger of death or great bodily injury.
22   [citation].  A killing committed in perfect self-defense is
     neither murder nor manslaughter; it is justifiable homicide.
23   [citation]." People v. Randle, 35 Cal. 4th 987, 994-95, 28 Cal.
     Rptr. 3d 725, 111 P.3d 987 (2005) (internal brackets and footnote
24   omitted).  "One acting in imperfect self-defense also actually
     believes he must defend himself from imminent danger of death or
25   great bodily injury; however, his belief is unreasonable.
     [citations].  Imperfect self-defense mitigates, rather than
26   justifies, homicide; it does so by negating the element of
     malice." Id. at 991-92 (original emphasis; internal quotations
27   omitted).  Petitioner's jury received instructions on both of
     these defenses (see R.T. 528-35).
28

1  that, in light of all available evidence, it is more likely than not
2  that no reasonable juror would convict him of the relevant crime."
3  Smith v. Baldwin, ___ F.3d ___, 2007 WL 4485872, at *10 (9th Cir.
4  Dec. 26, 2007) (en banc) (citation and footnote omitted).  The actual
5  innocence exception "should 'remain rare' and 'only be applied in the
6  extraordinary case.'"  Cooper v. Brown, ___ F.3d ___, 2007 WL 4233685,
7  at *37 (9th Cir. Dec. 4, 2007) (quoting Schlup, 513 U.S. at 321).  The
8  Schlup standard "contemplates a greater showing than insufficiency to
9  convict or doubt about [the petitioner's] guilt."  Id. (citation and
10  internal quotations omitted).  "Under these standards, a petitioner
11  must affirmatively prove that he is probably innocent."  Id. (citation
12  omitted).

13

14      In support of his actual innocence argument, Petitioner contends
15  that, as alleged in Claim Two, "material evidence was wrongly excluded
16  from the jury's consideration during deliberation" (Reply Mem., p. 8).
17  As mentioned above, Claim Two alleges the trial court failed to give a
18  lesser-included offense instruction on heat-of-passion voluntary
19  manslaughter.  Petitioner alleges that, in closing argument, the
20  defense requested such an instruction, but the court denied the
21  request (Petition, pp. 30-31).  Petitioner alleges that the jury could
22  have convicted him of voluntary manslaughter, and describes the trial
23  evidence which allegedly could have supported such a verdict
24  (Petition, pp. 34, 37-40).  Nowhere in Claim Two does Petitioner
25  describe any "material evidence" which assertedly was withheld from
26  the jury during deliberations.  To the extent Petitioner relies only
27  on the evidence introduced at trial, such a showing is insufficient to
28  demonstrate Petitioner's actual innocence.  See Cooper v. Brown, ___

F.3d ___, 2007 WL 4233685, at *80 ("Petitioner may not make a showing of actual innocence based on what was known at the time of trial and presented to the jury. [citations]."); Houston v. Castro, 2003 WL 21056800, at *3 (N.D. Cal., May 8, 2003) (rejecting actual innocence exception to statute of limitations, where petitioner presented no new evidence of actual innocence, but only "the same evidence that the trial court considered"); see also Bannister v. Delo, 100 F.3d 610, 618 (8th Cir. 1996), cert. denied, 521 U.S. 1126 (1997) ("putting a different spin on evidence that was presented to a jury does not satisfy the requirements set forth in Schlup"; citations, internal quotations and brackets omitted); Gomez v. Jaimet, 350 F.3d 673, 680 (7th Cir. 2003) (same, citing Bannister v. Delo).  To the extent Petitioner argues that the trial court's alleged failure to give a lesser-included offense instruction resulted in the conviction of one who is actually innocent, Petitioner is mistaken.  See Ransom v. Blades, 2007 WL 704124, at *5 (D. Idaho Mar. 5, 2007) (rejecting argument that lesser-included offense instruction itself would have established petitioner's actual innocence); Madrigal v. Bagley, 276 F. Supp. 2d 744, 756-57 (N.D. Ohio 2003) (same), aff'd on other grounds, 413 F.3d 548 (6th Cir. 2005).

Petitioner also contends that evidence mentioned in Ground Four of the Petition, some of which assertedly is contained in Exhibits B, C and D attached to the Petition, supports Petitioner's actual innocence claim (Reply Mem., pp. 8-9).  The only items of evidence Petitioner provides in support of his actual innocence claim are the referenced exhibits.  For the reasons discussed below, these exhibits, both individually and collectively, fail to demonstrate Petitioner's

1  actual innocence under the Schlup standard.

2

3  **Exhibit B**

4

5  Exhibit B consists of the following:

6

7  1.  Three pages from alleged defense investigation report
8  purporting to record interviews with Petitioner's sister and alleged
9  witnesses Smith and Young.  The report indicates that Petitioner's
10  sister assertedly told the investigator that she once saw Stevens
11  "chocking" Petitioner, that Petitioner told her that Stevens had
12  broken his car window, and that Petitioner's sister had heard about
13  other altercations between Stevens and Petitioner (Petition, Ex. B,
14  first page).  The report further records that Smith, assertedly a
15  neighbor and ex-friend of Petitioner's family, said that the victim
16  was a "nasty bitch" who was "always drunk," that Smith once saw the
17  victim challenging Petitioner, his mother and his sister to fight, and
18  that the victim actually fought with Petitioner and his sister
19  (Petition, Ex. B, second page).  The report states that Young
20  allegedly said that the victim had a violent temper and had fought
21  people on three or four occasions, and that Young saw the victim
22  strike Petitioner on two occasions (Petition, Ex. B, third page).

23

24  2.  An alleged page from a homicide investigation report stating
25  that a detective interviewed a confidential informant who stated that
26  a person named "Lil Loco (first name of LARRY)" had shot the victim,
27  and that "Lil Loco" said he "shot her in self defense fearing getting
28  beat up for the third time by a female" (Petition, Ex. B, fourth

1   page).

2

3       3.  An alleged page from a detective's notes stating that, in a

4   purported interview on the day of the shooting, the detective

5   assertedly obtained "second hand info" from Stevens' mother, who

6   allegedly was told that the suspect "T-Loc" got into a fist fight with

7   Stevens three days before, and that Stevens allegedly "slapped T-Loc

8   good" (Petition, Ex. B, fifth page).[9]  Stevens' mother allegedly

9   reported that "T-Loc" shot the victim twice, and that Stevens' mother

10  heard that her daughter was holding a brick, and that when she put the

11  brick down, "he shot her" (Petition, Ex. B, fifth page).  The

12  detective's notes also state that Stevens' mother said: "When Felisha

13  fell, she was still moving.  T-Loc walked up on her and said 'I might

14  as well kill you bitch.'  That was when he shot her in the head"

15  (Petition, Ex. B, fifth page).

16

17      4.  Petitioner's trial counsel's alleged notes of a purported

18  interview with Petitioner, stating that Petitioner allegedly told

19  counsel: (1) Stevens was very violent, got into fights with other

20  people, and had tried to commit suicide; (2) Petitioner had a bite

21  wound from a prior fight with Stevens; (3) Stevens hit Petitioner in

22  the face with the brick before the shooting; and (4) Petitioner did

23  not go get the gun, but rather he had the gun on him (Petition, Ex. B,

24  sixth page).

25  ///

26  ///

27  --------------------------------------------------

28      [9]   The trial evidence showed Petitioner was known as
    "T-Loc" (see R.T. 192, 275).

5. Counsel's alleged notes of his closing argument concerning manslaughter (Petition, Ex. B, seventh page).

**Exhibit C**

Exhibit C consists of the following:

1. A page from an alleged defense investigator's report indicating that, on October 16, 1995, the investigator assertedly served a subpoena duces tecum on the custodian of records at Brotman Medical Hospital, and a witness coordinator assertedly served a subpoena duces tecum on the custodian of records of the Los Angeles Police Department Discovery Unit (Petition, Ex. C, first page).

2. A document entitled "Affidavit of Custodian of Records" allegedly indicating that the custodian of records at Brotman Medical Center certified that a search of records revealed no records or partial records regarding Petitioner (Petition, Ex. C, second page).

3. Two documents entitled "Certificate of Custodian of Records," an uncompleted one dated October 14, 1995, and one dated December 22, 1995, stating that the medical records department of Brotman Medical Center allegedly did not have existing records under the name "Larry Rosser" Petition, Ex. C, third, fourth and fifth pages).

**Exhibit D**

Exhibit D purports to be a copy of Stevens' criminal record, some

22

of which is illegible, but which assertedly shows arrests for, among
other things, assault with a deadly weapon and battery (Petition,
Ex. D).


These exhibits do not suffice to meet the Schlup actual innocence
standard.  First, evidence similar to the alleged evidence in the
exhibits was presented at trial.  Petitioner testified he acted in
self-defense, and testified that he had the gun on him before he
arrived at the scene of the incident (see R.T. 436, 464).  The jury
nevertheless found Petitioner guilty.


The documents in Exhibit C do not show Petitioner's actual
innocence.  Evidence that Brotman Medical Center lacked any records of
Petitioner is not exculpatory.  Alleged statements by Stevens' mother
mentioning a prior altercation between Petitioner and Stevens, but
also stating that Petitioner shot Stevens, said "I might as well kill
you bitch," and shot her again, also do not constitute evidence of
actual innocence.


Some of the evidence conflicts with Petitioner's testimony and
thus is either unreliable or destructive of Petitioner's credibility.
Petitioner testified that he shot Stevens as she was "charging"
Petitioner with the brick[10] (R.T. 434-35).  Petitioner assertedly
believed that the look in Stevens' eyes as she "charged" Petitioner
showed that she intended to harm Petitioner (R.T. 434-35, 447-48).
Petitioner did not testify Stevens hit Petitioner with the brick.

---

[10]   Petitioner later testified Stevens was "walking fast"
toward Petitioner with the brick (R.T. 458).

1    Stevens' prior fights with Petitioner, her allegedly violent
2    reputation, her alleged criminal history, and her purported suicide
3    attempt do not show Petitioner's actual innocence under the Schlup
4    standard.  The jury heard similar evidence and found Petitioner
5    guilty.  There was testimony of previous fights between Petitioner and
6    Stevens (R.T. 204-05, 225-26, 434).  Petitioner testified that Stevens
7    threatened to kill Petitioner as she "charged" him (R.T. 434-35).

8

9    Much of Petitioner's trial testimony undercut his theory of self-
10   defense.  Petitioner testified that he was not "so afraid" of Stevens
11   before she picked up the brick, and that even after she picked up the
12   brick he did not think she was going to use it until she assertedly
13   "charged" Petitioner (R.T. 441, 469).  Petitioner testified that,
14   during the period leading up to the shooting, Petitioner never told
15   anyone he was afraid, and never was so afraid that he ran away or
16   tried to obtain help from others (R.T. 453-54).  Petitioner admitted
17   he could have run from Stevens, but claimed there seemed to be no
18   other choice at the time than to shoot Stevens (R.T. 459).  Petitioner
19   admitted shooting Stevens from about two feet away, but claimed he did
20   not know that the first bullet had struck her (R.T. 457-62, 477).
21   Petitioner denied chasing Stevens after he fired the first bullet, but
22   had no explanation for how she came to have been shot twice in the
23   back (R.T. 457, 459-60, 478).

24

25   The jury chose to disbelieve Petitioner's testimony that he shot
26   Stevens out of fear for his safety.  Petitioner has failed to show
27   that it is more likely than not that no reasonable juror hearing the
28   alleged additional evidence of Stevens' violent nature and prior

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.